```
             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
                           ---

MARY COMANS,                    )
                                )
                                )
      Plaintiff,                )  CIVIL NO. 25-0624
                                )
v.                              )
                                )  August 6, 2025
DEPARTMENT OF HOMELAND          )
SECURITY,                       )
                                )
                                )
      Defendant.                )
_____  )

            TRANSCRIPT OF PRE-MOTION CONFERENCE

             BEFORE THE HONORABLE ANA C. REYES
                UNITED STATES DISTRICT JUDGE
                           ---

  APPEARANCES:       LAW OFFICES OF MARK S. ZAID, P.C.
                     BY:  MARK S. ZAID, ESQ.
                          BRADLEY P. MOSS, ESQ.
                     1250 Connecticut Avenue, NW, Ste. 700
                     Washington, DC 20036

                     DEMOCRACY DEFENDERS ACTION
                     BY:  TARYN WILGUS NULL, ESQ.
                     600 Pennsylvania Ave. SE., No. 15180
                     Washington, DC 20004

                     For the Plaintiff

                     UNITED STATES ATTORNEY'S OFFICE
                     BY:  JOHN BARDO, AUSA
                     601 D Street NW
                     Washington, DC 20530

                     For the Defendant
                           ---


  COURT REPORTER:    CHANDRA R. KEAN, RMR
                     Official Court Reporter
                     333 Constitution Avenue, NW
                     Washington, DC 20001
```

**PROCEEDINGS**

1
2       (Court called to order at 2:36 p.m.)
3       THE COURT:  I apologize for being late.  I got
4   held up with something.
5       DEPUTY COURTROOM CLERK:  This is civil action
6   25-624, Mary Comas v. Department of Homeland Security et
7   al.
8   Would the parties please come forward and identify
9   themselves for the record, beginning with plaintiff's
10  counsel.
11      MR. ZAID:  Good afternoon, Judge.  How are you
12  today?
13      THE COURT:  Good.
14      MR. ZAID:  Mark Zaid for the plaintiff.  I have
15  Brad Moss from my firm; Taryn Null from the State
16  Democracy Defender's Fund.  Taryn will do most of the
17  arguing today.  And the plaintiff, Mary Comans as well.
18      THE COURT:  Okay.  Mr. Bardo, you're back.
19      MR. BARDO:  I am, Your Honor.  Good afternoon.
20  John Bardo on behalf of the defendant.
21      THE COURT:  Okay.  Nice to see you again.
22  Could you just tell me, just briefly in your words,
23  what's wrong with the complaint?
24      MR. BARDO:  Your Honor, there are two counts in
25  this complaint.  One is a failure to maintain adequate

1    records and the other is an unlawful disclosure.  I'll
2    start with the unlawful disclosure because it's a little
3    bit easier.
4         Plaintiff makes an allegation in the complaint
5    about a press release that she says disclosed her
6    Privacy Act protected information, but the release
7    contains her name and job title, and an employee's name
8    and job title is not Privacy Act protected information.
9         As a matter of fact, there's a regulation that
10   is -- there's a -- it's in Title 5 -- yes, it's 5 C.F.R.
11   293.311 that --
12            THE COURT:  Well, I mean, putting the names and
13   job titles aside, I don't think that's her problem.
14   Mainly her problem is what you wrote about why she was
15   terminated.
16            MR. BARDO:  Well, that's not information that
17   was in a system of records.
18            THE COURT:  Okay.  Did she get -- did she get
19   sort of a notice as to why she was being terminated?
20            MR. BARDO:  She did.  She was -- at least
21   according -- I mean, I'm just going off of what's in the
22   complaint.
23            THE COURT:  Uhm-hmm.
24            MR. BARDO:  According to the complaint, she did
25   receive a notice from -- it was from a MaryAnn Tierney,

1    a senior official at the agency.  At least according to
2    the complaint, it just -- it said that she was being
3    terminated.  It doesn't go into any specifics.
4            THE COURT:  Well, somewhere in her personnel
5    file, I assume there's a reason why she got terminated.
6    Maybe that's a bad assumption on my part at this moment
7    in time.  But I mean, I'm sure someone didn't just come
8    out of thin air as to why she was being terminated.
9            MR. BARDO:  I -- it wouldn't necessarily -- the
10   reason, though it's stated in the press release,
11   wouldn't be -- wouldn't necessarily be in the personnel
12   file.
13           THE COURT:  Well, then how did the -- so I
14   mean, the question then would be how did the person who
15   got this information get it, right?
16           MR. BARDO:  Umm...
17           THE COURT:  Unless she just made it up out of
18   thin air, and then she has a different claim.  Then she
19   has a defamation claim.
20       I mean, you might not know that yet.  I mean, what
21   we might be doing is like doing some initial targeted
22   discovery, unless the plaintiff can tell me where --
23   that they know that this information came from her
24   personnel file.
25           MR. BARDO:  Well, it's plaintiff's burden in

```
 1    the complaint to state her claim with specificity, and
 2    the complaint doesn't identify a group of records.
 3           THE COURT:  Well, it's personnel records.  I
 4    think I can fairly -- I think someone could fairly infer
 5    that if someone's being fired, there would be something
 6    in their file that would indicate why they're being
 7    fired, or some system of records somewhere.
 8        I mean, I imagine someone wasn't just hanging
 9    around thinking:  Oh, I know, we'll say that we
10    terminated her because she circumvented leadership to
11    make -- oh, and then even worse, there's a split
12    infinitive -- to make egregious payments for luxury New
13    York City hotels for migrants.
14        I mean, either someone made that up -- either
15    someone made that up out of whole cloth, in which case
16    she has a defamation case, or someone was basing that
17    off something in a record somewhere in the agency.  Like
18    either the record being, you know -- the records of the
19    payments, the records of her conduct, something in her
20    personnel files indicating that this had happened.
21           MR. BARDO:  Well, I think the Court's assuming
22    that it's from her personnel file.  It could be --
23           THE COURT:  But the Privacy Act doesn't just
24    cover personnel files, right?  It covers any system of
25    records within the government that involves her.
```

```
1              Is that not correct?
2              MR. BARDO:  It covers any system of records
3     that can be searched by a person's name or identifier.
4              THE COURT:  Well, all right.  So somewhere, I
5     imagine there's a piece of paper that indicates why she
6     was fired.  And I'm guessing that wherever that piece of
7     paper exists, someone can search the database with her
8     name and come up with that.  Unless someone came up with
9     it out of whole cloth, which may well be the case, but
10    then you've got a bigger problem.
11             MR. BARDO:  Well, that -- to get to the
12    conclusion, though, that it's in the system of records,
13    you would have to speculate on several levels to reach
14    that conclusion.
15             THE COURT:  Well, what would be the
16    speculation?  Just that someone wrote down somewhere why
17    she was getting fired -- or there were complaints
18    against her or someone had given her a warning -- I
19    don't see how that's speculative.
20         All I'm saying is that if she's being fired for,
21    quote, "circumventing leadership to unilaterally make
22    egregious payments for luxury NYC hotels for migrants,"
23    someone didn't just come up with that out of thin air.
24    It came from something.  And it would have -- I think a
25    fair, logical inference to say that it came from records
```

1 within the department.
2 MR. BARDO: Well, it may have come from records
3 within the department, but they aren't necessarily a
4 Privacy Act system of records. It could be an email.
5 It could be -- it could be any number --
6 THE COURT: Right, but it could be part of a
7 system of records. I just don't think that that's a
8 leap. And, you know, she is saying in their complaint
9 that it comes from records.
10 I mean -- before we get down -- too far down this
11 road, we're going to sort of talk about how to figure
12 this out, but -- I hear your point, but I just -- and
13 I'll ask the plaintiffs about this.
14 MR. BARDO: Sure. And she has to also allege
15 that it was retrieved -- the information was retrieved
16 from a system of records.
17 THE COURT: Understood. Okay.
18 MR. BARDO: I think -- yeah, okay.
19 With regard to the failure to properly maintain
20 records, I know Ms. Comans says in her opposition that
21 she isn't contesting her termination. Yet, the language
22 in her opposition seems to contradict that where she
23 suggests that -- that the department's failure to
24 adequately maintain the records was the cause of her
25 termination, and, therefore, the termination was

1  unlawful.
2       That -- you cannot use the Privacy Act as a basis
3  to contest your termination from federal service.  That
4  has to be brought pursuant to the Civil Service Reform
5  Act.
6       And I understand Ms. Comans has a matter before the
7  Civil Service Reform Act, but not only that, she has
8  another matter in the Eastern District of Virginia
9  alleging that her termination was a violation of her due
10 process rights.
11      THE COURT:  Okay.  So I'll ask them that.  I
12 mean, that to me seems to go to -- I mean, it's
13 certainly not an employment challenge to say that they
14 did not keep the records correctly.  Now, in terms of
15 what damage that creates, it seems like that's what we
16 get into, right?
17      MR. BARDO:  Yes, Your Honor.  But the damage
18 can't be:  You failed to maintain my records properly;
19 therefore, I lost my job.
20      THE COURT:  No, understood.  But it can't be
21 you failed to maintain my records and therefore I
22 suffered some pecuniary harm of some sort or some -- I
23 don't know, if -- what kind of harms are allowed under
24 the Act.  But the Privacy Act does have a private right
25 of action, right?

1          MR. BARDO:  It does, yes.
2          THE COURT:  Okay.  And so I imagine that
3    there's some understanding within the courts or -- of
4    what not as to -- if something is not maintained, what
5    the damages that can flow from that are.  And I take
6    your point that the damages can't be that she is
7    reinstated into her job.
8          I understand that.
9          MR. BARDO:  Okay.
10         THE COURT:  All right.  Thank you.
11         MR. BARDO:  Thank you.
12         THE COURT:  All right.  Government -- I mean,
13   plaintiff.
14         MS. WILGUS NULL:  Thank you, Your Honor.  Taryn
15   Wilgus Null for Mary Comans.
16         THE COURT:  All right.  Do you all know
17   where -- like, do you know where this information was
18   gotten or is it -- basically how do you know this was in
19   a system of records?
20         MS. WILGUS NULL:  So at this point we are
21   presuming that inside Ms. Comans' personnel file there
22   is information about her termination and the reasons for
23   it.  Part of the issue here is that once Ms. Comans was
24   terminated, she lost access to her electronic personnel
25   file.  So --

```
 1              THE COURT:  Mr. Bardo, doesn't it just seem
 2   like what we should do here before we all start briefing
 3   a bunch of stuff is you look through her personnel file
 4   or make it available for them to review to see if this
 5   information was in her personnel file?
 6              MR. BARDO:  I would have to run that by my
 7   client, Your Honor.
 8              THE COURT:  Okay.  Let me make it easier for
 9   you.  I'm ordering that you all get together and figure
10   out somehow whether this was in her personnel file,
11   because I'm not going to have people wasting a bunch of
12   time, energy, and money briefing motions and having
13   argument if there's a simple answer.
14        I mean, if it's in her files, I don't think you're
15   going to have much with respect to a 12(b)(6), right?
16   At least with that part of it, right?
17              MR. BARDO:  Yes, Your Honor.
18              THE COURT:  And if it's not in her files,
19   you're not going to have much of a case, right?
20              MS. WILGUS NULL:  Correct.
21              THE COURT:  So this seems to be one of those
22   wonderful occasions where we can figure out whether we
23   should move forward or not.  All right?
24        And I'm not going to prevent you from filing a
25   12(b)(6).  You can do it.  But before you all do that, I
```

```
 1    want you to get together and just kind of figure out the
 2    answer to this question.  All right.
 3            MR. BARDO:  That's fine, Your Honor.
 4            THE COURT:  Anything else?  Do you want to talk
 5    about the -- you can be seated, Mr. Bardo.
 6       Do you guys want to talk about anything else with
 7    respect to -- well, do you want to argue on the second
 8    issue, the manage- -- well, I guess the management issue
 9    goes away, too, if it's not in her file, right?
10            MS. WILGUS NULL:  Right.  Yeah, I mean, I'm
11    happy to speak to any of the issues that the government
12    raised.
13            THE COURT:  Well, just talk to me quickly about
14    damages if -- I mean, he is right that you can't
15    backdoor a termination claim.
16            MS. WILGUS NULL:  Correct.
17            THE COURT:  So what would -- how would you
18    calculate damages if this was to go forward?
19            MS. WILGUS NULL:  Yeah.  And again, we're not
20    seeking reinstatement of her employment here, as
21    Mr. Bardo mentioned.  We have separate -- separate
22    actions challenging her termination.  What we're
23    challenging here are the damages that stem from the
24    dissemination of inaccurate information that was kept in
25    the system of records and the failure to maintain
```

```
 1    accurate information.
 2            THE COURT:  Okay.
 3            MS. WILGUS NULL:  So -- you know, so her
 4    pecuniary damages are from the loss of employment
 5    opportunities.
 6            THE COURT:  Okay.
 7         Now, have you guys -- I mean -- and no one is
 8    pursuing a defamation claim anywhere?
 9            MS. WILGUS NULL:  We do not have a defamation
10    claim.
11            THE COURT:  All right.  Well, how much -- I'm
12    going to give you guys 30 days.  I want a joint status
13    report in 30 days.
14            MS. WILGUS NULL:  Okay.
15            THE COURT:  If -- if the information isn't in
16    the personnel records, then, you know, you decide
17    whether or not you want to keep the case going.  If it
18    is in the records, you decide whether you still want to
19    file your 12(b)(6).  If you still want to file it, you
20    can.  You guys come up with a briefing schedule.  But,
21    you know, I don't think we're going to have much to go
22    on if it's in the records, okay?
23         All right.
24            MR. ZAID:  Judge, just one point.  The 30 days
25    is a Saturday, so Friday the 5th.
```

```
1                THE COURT:  Friday the 5th is fine.
2         Is that good for you guys?
3                MR. BARDO:  That works for the government.
4                THE COURT:  And if you guys are still working
5    and you need more time, just put in the joint status
6    report, "we're still working together, we need more
7    time."  But Mr. Bardo, do not let the wonderful world of
8    bureaucracy get this bogged down.  I just want to get
9    this resolved quickly so we know whether we're moving
10   forward or not.  Okay?
11               MR. BARDO:  Understood, Your Honor.  It
12   shouldn't be difficult to grab a personnel file.
13               THE COURT:  Okay.  Thank you.
14        Thank you, everyone.
15               MS. WILGUS NULL:  Thank you, Your Honor.
16        (Court recessed at 2:48 p.m.)
17                           - - -
18                         CERTIFICATE
19
20      I, Chandra Kean, RMR, hereby certify that the
21   foregoing transcript is a true and correct transcription
22   of the proceedings held in the above-titled matter.
23
24
25   _____          August 18, 2025
         Chandra Kean, RMR               DATE
```