**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARY COMANS,<br><br>      Plaintiff,<br><br>  v.<br><br>DEPARTMENT OF HOMELAND<br>SECURITY, *et al.*,<br><br>      Defendants. | Civil Action No. 25-0624 (ACR) |

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

**TABLE OF CONTENTS**

I.   DEFENDANTS' DISCLOSURE OF MS. COMANS' TERMINATION VIOLATED THE PRIVACY ACT .................................................................................................................. 1

   A.   On Its Face, the Privacy Act Establishes that a Disclosure of an Employee's Termination Is a Violation of the Statute ................................................................. 1

   B.   Federal Case Law Establishes that a Disclosure of an Employee's Termination Is a Privacy Act Violation ................................................................................... 2

   C.   The Cases Cited by Defendants Do Not Establish that the Federal Government May Disclose an Employee's Termination Without Violating the Privacy Act ................................. 6

   D.   Another Federal Agency Recently Recognized that It May Not Disclose Employee Information Without Consent ................................................................................. 9

II.   Plaintiff Reasonably Needs Limited Discovery to Determine Whether Information Beyond the Termination Originated from a System of Records ................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*African Communities Together v. Lyons*, No. 25 Civ. 6366 (PKC) (2026) ................................... 15

*Akerman v. Austin*, (2022), ....................................................................................................... 9

*Ames v. U.S. Dep't of Homeland Sec.*, 861 F.3d 238 (2017) ...................................................... 6

*Bartel v. F.A.A.*, 725 F.2d 1403 (1984) ..................................................................................... 7

*Bigelow v. Dep't of Def.*, 217 F.3d 875 (2000) .......................................................................... 7

*Chen v. FBI et al.*, 153 F.4th 1289 (2025) ................................................................................ 15

*Cloonan v. Holder*, 768 F. Supp. 2d 154 (2011) ........................................................................ 7

*Del Fuoco v. O'Neill*, ( 2011) .................................................................................................... 9

*Doe v. Chao*, 540 U.S. 614 (2004) ........................................................................................... 5

*Drapeau v. United States*, (2006) .............................................................................................. 9

*F.A.A v. Cooper*, 566 U.S. 284 (2012), ..................................................................................... 5

*Feldman v. CIA*, 797 F. Supp. 2d 29 (2011) ....................................................................... 14, 15

*Jackson v. Veterans Admin.*, 503 F. Supp. 653 (1980) ............................................................... 8

*Kassel v. U.S. Veterans' Admin.*, 709 F. Supp. 1194 (1989) ............................................... 12, 13

*Leader Corp. v. U.S. Dep't of Homeland Sec.*, 749 F.3d 45 (2014) ........................................... 11

*Logan v. Dep't of Veterans Affs.*, 357 F. Supp. 2d 149 (2004) ................................................... 5

*Lowe v. Winter*, (2007) ........................................................................................................... 16

*Minshew v. Donley*, 911 F. Supp. 2d 1043 (2012) ..................................................................... 7

*Ramos v. U.S. Dep't of Agric.*, (2022) ..................................................................................... 12

*Stuart v. Vilsack*, (2016) ........................................................................................................ 10

*Tennessean Newspaper, Inc. v. Levi*, 403 F. Supp. 1318 (1975) ......................................... 10, 11

*Tripp v. Dep't of Def.*, 193 F. Supp. 2d 229 (2002) ............................................................ 9, 15

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989) ......... 12

**Statutes**

5 C.F.R. § 293.311 ................................................................................................................... 7

5 U.S.C. § 552a ..................................................................................................... 5, 6, 8, 10

**Other Authorities**

Brian Todd, *Exclusive: VA conducted internal investigations into employees who attended vigil for Alex Pretti*, CNN (2026) ............................................................................................... 13

Emma Tucker, *A man shot by an ICE agent in Minneapolis was charged with assaulting law enforcement. A startling admission ended the case*, CNN (2026) ........................................... 15

*Government settles with Tripp for $595,000*, CNN (2003) .......................................................... 9

H.R. 93-1416, 93d Cong. 2d Sess. (1974) ................................................................................. 7

Zoe Tillman, *Under Trump, DOJ Makes Errors in Court, Testing Judges' Patience*, Bloomberg Law (2026) ......................................................................................................................... 15

It was a violation of the Privacy Act for Defendants to publicly disclose the fact of Plaintiff Mary Comans' ("Ms. Comans") termination, and the government fails to establish otherwise.  Per the Court's request, Ms. Comans is concisely addressing two specific and narrow issues:  (1) whether the disclosure of a termination action against an individual, as opposed to merely whether or not an agency employs her, is a Privacy Act violation; and (2) whether other information that Defendants allegedly disseminated originated from the agencies' system of records.  Minute Order (Mar. 24, 2026).

## I.   DEFENDANTS' DISCLOSURE OF MS. COMANS' TERMINATION VIOLATED THE PRIVACY ACT

The Privacy Act imposes "a comprehensive and detailed set of requirements for the management of confidential records held by Executive Branch agencies," *F.A.A v. Cooper*, 566 U.S. 284, 287 (2012), and "provides for various sorts of civil relief to individuals aggrieved" by the government's failure to comply, *Doe v. Chao*, 540 U.S. 614, 618 (2004).

### A.  <u>On Its Face, the Privacy Act Establishes that a Disclosure of an Employee's Termination Is a Violation of the Statute</u>

Although the Parties are not yet addressing the entire framework of Ms. Comans' Privacy Act claims, it is worth noting that to state a claim for improper disclosure under subsection (b) of the Privacy Act, 5 U.S.C. § 552a(b), Ms. Comans must allege that (1) the information in question is a "record" that is contained within "a system of records," (2) the agency improperly "disclosed" the information, (3) an adverse impact resulted from the disclosure, and (4) the agency's disclosure was willful or intentional.  *Logan v. Dep't of Veterans Affs.*, 357 F. Supp. 2d 149, 154 (D.D.C. 2004).  The Privacy Act explicitly provides that "[n]o agency shall disclose any

record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains" unless certain exceptions apply.  5 U.S.C. § 552a(b). A "record" is defined as "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or *employment history* and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph."  *Id.*(a)(4) (emphasis added).  Although various exemptions legitimately exist to permit an agency to otherwise disclose privacy-protected information, including a catch-all "routine use" provision, *see e.g.*, *Ames v. U.S. Dep't of Homeland Sec.*, 861 F.3d 238, 240 (D.C. Cir. 2017) (quoting 5 U.S.C. § 552a(b)(3)), Defendants do not claim that any apply to this matter, nor do they dispute the fact that Ms. Comans' termination is information contained within her protected personnel file.  Defs.' Mot. to Dismiss & Mem. In Support Thereof at 2, 5 (Apr. 29, 2026) (Dkt. No. 21) ("Defs.' Mot."); Joint Status Report. ¶ 1 (Dkt. No. 14).

Therefore, on its face the Privacy Act prohibits the unauthorized disclosure of employment history, which includes the fact of an employee's termination.

### B.  <u>Federal Case Law Establishes that a Disclosure of an Employee's Termination Is a Privacy Act Violation</u>

Ms. Comans need not rely solely on the statutory language as case law also establishes that a disclosure of an employee's termination can violate the Privacy Act.  To be clear, it is Ms. Comans' contention that, contrary to the view of the Defendants, disclosing an individual's employment "status", Defs.' Mot. at 4, cannot be viewed as the same as unlawfully disclosing

that they were terminated from their employment.[1]  As a general matter, the Privacy Act "prohibits government agencies from disclosing personnel files" without the consent of the individual.  *Bigelow v. Dep't of Def.*, 217 F.3d 875, 876 (D.C. Cir. 2000).  Additionally, the information that was alleged to have been disclosed can be "either directly or indirectly retrieved from a system of records."  *Cloonan v. Holder*, 768 F. Supp. 2d 154, 164 (D.D.C. 2011).

Specifically, there are several cases that support the claim that the Privacy Act was violated when information about an employee's termination was unlawfully disclosed although, surprisingly, neither Party was unable to identify a case from within our District that was factually directly on point with respect to disclosure of a federal employee's termination.  Indeed, as referenced below, the undersigned was only, to date, able to identify one case in our District that touched upon – but did not decide – the issues before the Court now.  That said, if the issue was as clear-cut as Defendants suggest, there would be nothing to argue about.  On the contrary, the implication of the case law on the whole is that the unauthorized disclosure of an employee's termination *is* a Privacy Act violation if the other elements of a Privacy Act violation are met.

For example, in *Minshew v. Donley*, 911 F. Supp. 2d 1043, 1053–54 (D. Nev. 2012), a former Air Force employee sued the Air Force for an unauthorized disclosure in violation of the Privacy Act after her former supervisor informed a prospective employer that she had been terminated for cause.  The parties cross-moved for summary judgment on this claim and the

---

[1] As a general matter, Office of Personnel Management Regulation 5 C.F.R. § 293.311(a)(1)-(2), (a)(4) permits the release to the public of a person's name,  present and past position titles, and present and past annual salary rates.  *See also* H.R. 93-1416, 93d Cong. 2d Sess. at 13 (Oct. 2, 1974) (indicating Congress did not intend Privacy Act to prohibit disclosure to public of information such as "names, titles, salaries, and duty stations of most Federal employees").  Notably, this does not include information that an employee was terminated or the reason for the termination.  Additionally, the GS-level and salaries of public officials are "information . . . traditionally released by an agency to the public without a [] FOIA request."  *Bartel v. F.A.A.*, 725 F.2d 1403, 1413 (D.C. Cir. 1984).

Court denied both parties' summary judgment motions, finding that there are genuine issues of fact in dispute as to whether the information was willfully disclosed and whether the need-to-know exception laid out in 5 U.S.C. § 552a(b)(1) applies. *Donley*, 911 F. Supp. at 1072-73. There was no suggestion that disclosure of a termination could not support a Privacy Act violation; the government did not argue that it could not, and the import of the decision is that if the disclosure was willful and the need-to-know exception does not apply, the Privacy Act was violated. *See id.* at 1068-73.

Along the same lines, *Jackson v. Veterans Admin.*, 503 F. Supp. 653, 654 (N.D. Ill. 1980), addressed a disclosure about a former federal employee, including that he "resigned from the VA pending termination for 'poor judgment in the performance of his duties.'" The Court held that a Privacy Act violation had not taken place because the information disclosed was not retrieved from a system of records. Implicit in the decision was an understanding that the disclosure of the employee's resignation pending termination would have been a Privacy Act violation had the disclosed information actually been retrieved from a system of records. It would be absurd if it was impermissible to disclose that an employee resigned pending termination, but permissible to disclose that the employee was actually terminated. Defendants have conceded to the Court that information about Ms. Comans' termination was contained within a system of records. Defs.' Mot.at 2, 5; Joint Status Report. ¶ 1 (Dkt. No. 14).

While there are cases that have rejected Privacy Act claims alleging unlawful disclosure of an employee's termination, it was for reasons that do not support a conclusion that it is lawfully permissible for the government to disclose the fact of an employee's termination. In fact, none of the identified cases suggested a bright-line rule that the government may permissibly disclose an employee's termination. *See, e.g.*, *Akerman v. Austin*, No.

4

122CV696LMBWEF, 2022 WL 16700382, at *10 (E.D. Va. Nov. 3, 2022), *aff'd*, No. 22-2066, 2023 WL 5561258 (4th Cir. Aug. 29, 2023) (disclosure of termination not Privacy Act violation because permitted as routine use); *Del Fuoco v. O'Neill*, No. 8:09-CV-1262-T-27MAP, 2011 WL 601645, at *10 (M.D. Fla. Feb. 11, 2011) (no Privacy Act violation because government disclosure of termination letter was mandated by regulation); *Drapeau v. United States*, No. CIV. 04-4091, 2006 WL 517646, at *6 (D.S.D. Mar. 1, 2006) (summary judgment granted for defendant on Privacy Act disclosure claim because information disclosed was not retrieved from system of records).

The only case the undersigned could identify from our District that bears some relevance is that of *Tripp v. Dep't of Def.*, *et al.*, 193 F. Supp. 2d 229 (D.D.C. 2002), which arose from the scandal surrounding President William J. Clinton and his affair with White House intern Monica Lewinsky.  Linda Tripp, who had befriended Ms. Lewinsky and then revealed her secret relationship to the world, sued the government for Privacy Act violations for disclosing various facts to the media, to include her termination from federal employment.  *Id*. at 232.  The issue was never formally decided by the Court, but Ms. Tripp was permitted to pursue discovery on the matter.  *Id*. at 235.[2]

Respectfully, an implicit understanding from these cases is that if the government discloses an employee's termination and other elements of a Privacy Act violation are met, the Privacy Act has been violated.

---

[2] Not long after, the government settled all claims with Ms. Tripp for $595,000 in 2003 (worth over one million dollars today).  *Government settles with Tripp for $595,000*, CNN (Nov. 6, 2003, at 6:47pm EST), https://www.cnn.com/2003/LAW/11/03/linda.tripp/index.html.

### C. The Cases Cited by Defendants Do Not Establish that the Federal Government May Disclose an Employee's Termination Without Violating the Privacy Act

Defendants' reliance on *Stuart v. Vilsack*, No. 2:14-CV-416-SMJ, 2016 WL 6902347 (E.D. Wash. Nov. 23, 2016), both during the last court appearance and in its Motion, to support its claim that "an agency's disclosure of 'employment status' has been 'held to not violate the Privacy Act'" is misplaced. Defs.' Mot. at 5. *Stuart* itself relied on only one case, *Tennessean Newspaper, Inc. v. Levi*, 403 F. Supp. 1318, 1321 (M.D. Tenn. 1975), to support the statement that "[a]n agency's disclosure of employment status has been held to not violate the Privacy Act." *Stuart*, 2016 WL 6902347 at *9. That statement, however, is a distortion and overreading of what *Tennessean Newspaper* held in a very specific context.

In *Tennessean Newspaper*, the defendant, a United States Attorney, "interpreted the Privacy Act as precluding the disclosure by him or persons in his office of certain information in his possession concerning individuals arrested or indicted in the District. Specifically, the information held precluded from disclosure includes the age, address, marital status, employment status, circumstances of arrest, the scope of the investigation leading to arrest or indictment, and other background material." 403 F. Supp. at 1320. The defendant denied requests the journalist plaintiffs made for this information about arrested or indicted individuals, which had previously been made publicly available, even when the request was treated as one made under the Freedom of Information Act ("FOIA"). *Id.* The Privacy Act explicitly provides that it does not prohibit the disclosure of information required to be disclosed under FOIA. 5 U.S.C. § 552a(b)(2). FOIA requires disclosure of the information requested by the plaintiffs unless a statutory exemption applies, such as for "investigatory records compiled for law enforcement purposes, but only to

6

the extent that production of such records would . . . (C) constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7).

The court rejected the defendants' contention that disclosing the requested information would "constitute an unwarranted invasion of personal privacy" because "[i]n examining the limited facts and circumstances of this case, the Court is of the opinion that the privacy concerns which would be invaded by the disclosure of the requested information are not sufficient to warrant the application of the balancing test.  Disclosing the requested information about persons arrested or indicted for federal criminal offenses does not involve substantial privacy concerns." *Tennessean Newspaper*, 403 F. Supp. at 1320-21.  This rationale is specific to people who have been arrested or indicted, as the court noted that "individuals who are arrested or indicted become persons in whom the public has a legitimate interest, and the basic facts which identify them and describe generally the investigations and their arrests become matters of legitimate public interest.  The lives of these individuals are no longer truly private.  Since an individual's right of privacy is essentially a protection relating to his or her private life, this right becomes limited and qualified for arrested or indicted individuals, who are essentially public personages." *Id.* at 1321.  Importantly, the Court was clear that its holding was limited to the particular facts of that case.  *Id.*  That holding and rationale cannot fairly be read to allow government disclosure of the termination of an employee who has not been arrested or indicted.

Additionally, it is not clear that *Tennessean Newspaper* is even still good law.  In *Union Leader Corp. v. U.S. Dep't of Homeland Sec.*, 749 F.3d 45, 51 (1st Cir. 2014) the First Circuit "respectfully decline[d] to rely on *Tennessean Newspaper…*, which the Union Leader cites for the proposition that privacy interests are insubstantial in the case of 'persons arrested or indicted for federal criminal offenses.'  The *Tennessean* court reasoned that such individuals 'are

7

essentially public personages' whose lives 'are no longer truly private'; in an accompanying footnote, it drew an analogy to 'the public personage idea derived from the [privacy] tort cases.' We question the validity of that analogy in light of the Supreme Court's subsequent distinction of FOIA privacy interests from tort-law privacy interests in [*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 n.13 (1989)]."

In fact, one of the cases cited by Defendants actually supports Ms. Comans' position that disclosure of a termination can constitute a Privacy Act violation. Defendants cite *Ramos v. U.S. Dep't of Agric.*, No. 22-CV-20312, 2022 WL 2208915, at *4 (S.D. Fla. June 21, 2022) for the proposition that "disclosing someone's employment status is disclosing 'whether an employee is still employed or has been terminated.'" Defs.' Mot. at 5 (*citing Stuart*). *Ramos*, however, distinguished an employee's status on administrative leave from an employee's employment status "because one's employment status only indicates whether one is employed by a government agency and reveals nothing about one's private affairs. To the contrary, one's status on administrative leave is related to one's job performance, the disclosure of which would be an unwarranted invasion of personal privacy and would violate the Privacy Act." *Ramos*, 2022 WL 2208915, at *4. The fact of an employee's termination is similarly related to their job performance; it is not merely information about whether they are employed by the government. Therefore, the rationale of *Ramos* supports Ms. Comans' argument that Defendants violated the Privacy Act when they publicly stated she had been terminated.

Defendants further stretch to cite dicta from *Kassel v. U.S. Veterans' Admin.*, 709 F. Supp. 1194 (D.N.H. 1989), to suggest that the disclosure of the fact of an employee's termination is not a Privacy Act violation. Defs.' Mot. at 7. In denying summary judgment for the defendants on the plaintiff's claim that the defendants violated the Privacy Act by publicly disclosing his letter

8

of termination, the court suggested that "[a]lthough the public may have had an interest in knowing that Dr. Kassel was to be discharged, the public had no interest in seeing his letter of termination, which contained detailed allegations of specific shortfalls in his job performance." *Kassel*, 709 F. Supp. at 1200. While Defendants want to rely on the first half of the quoted sentence, it is merely unsupported dicta, and it does not make a definitive statement that the public *does* have an interest in knowing about the discharge, only that the public *may* have such an interest. Respectfully, this dicta should not serve as justification to permit Defendants to publicly disclose Ms. Comans' termination without her consent.

### D. Another Federal Agency Recently Recognized that It May Not Disclose Employee Information Without Consent

A recent article highlighted the situation of Becky Halioua and several other employees of the Department of Veterans Affairs ("VA") who were subjected to internal investigations after attending vigils to honor Alex Pretti after he was killed. Brian Todd, *Exclusive: VA conducted internal investigations into employees who attended vigil for Alex Pretti*, CNN (May 5, 2026), https://www.cnn.com/2026/05/05/politics/va-investigation-vigil-alex-pretti. Quite pertinent to the issue before this Court, "VA press secretary Quinn Slaven said he could not comment on [Ms]. Halioua's case, citing privacy concerns. 'Privacy laws prevent VA from publicly discussing specific details about its employees without their written consent,' Slaven said in a written statement." *Id.* It should not go unnoticed that an official at a different federal agency in this Administration recognizes that it is impermissible to publicly release employee information without consent.

9

**II.    Plaintiff Reasonably Needs Limited Discovery to Determine Whether Information Beyond the Termination Originated from a System of Records**

Defendants claim that "[o]ther than the fact that Comans was terminated no other information in the press release could be found in a Privacy Act System of Records." Defs.' Mot. at 5. They assert that information in the press release that Ms. Comans "was terminated 'for circumventing leadership to unilaterally make egregious payments for luxury NYC hotels for migrants.'…is not in Comans's personnel file… or in any of her performance reviews. No other system of records would have this information." *Id.* (citations omitted). Defendants claim that they "searched all possible systems." *Id.* at 5.

While at this time, Plaintiff has no reason to disbelieve these assertions by Defendants' counsel, she certainly deserves the opportunity to test these assertions with at least limited discovery. "[A] plaintiff can hardly be expected to know the full details behind an improper disclosure prior to discovery, since those details are most likely to be under the control of the defendant." *Feldman v. CIA*, 797 F. Supp. 2d 29, 41 (D.D.C. 2011).

Ms. Comans has not yet had the opportunity to communicate with Defendants directly about whether any disclosed information other than her termination can be found in a system of records. The derogatory information and accusations that appeared in the press release and through statements provided to the media did not simply appear out of nowhere. Some employee of Defendants retrieved this information and disseminated it to officials who publicized it. Ms. Comans believes that limited and focused discovery (*e.g.*, depositions and written discovery) would allow her to directly seek information about the source of the information disclosed about her.

And while neither Ms. Comans nor her undersigned counsel believe Defendants' counsel would knowingly provide false information to this Court, the fact cannot be overlooked that in

recent months the U.S. Department of Justice ("DOJ") has repeatedly provided false information to federal courts after receiving incorrect information from their clients. *See, e.g.*, *African Communities Together v. Lyons*, No. 25 Civ. 6366 (PKC) (S.D.N.Y. Mar. 24, 2026), Dkt. No. 77, https://storage.courtlistener.com/recap/gov.uscourts.nysd.646893/gov.uscourts.nysd.646893.77.0.pdf (letter to court from DOJ "correct[ed] a material mistaken statement of fact that the Government made to the Court and Plaintiffs" and clarified that current ICE guidance "does not and has never applied to civil immigration enforcement actions in or near Executive Office for Immigration Review ("EOIR") immigration courts"); Zoe Tillman, *Under Trump, DOJ Makes Errors in Court, Testing Judges' Patience*, Bloomberg Law (Apr. 10, 2026, 6:30 AM EDT), https://news.bloomberglaw.com/us-law-week/under-trump-doj-makes-errors-in-court-testing-judges-patience; Emma Tucker, *A man shot by an ICE agent in Minneapolis was charged with assaulting law enforcement. A startling admission ended the case*, CNN (Feb. 15, 2026), https://www.cnn.com/2026/02/15/us/ice-shooting-dhs-doj-false-statements (DOJ filed motion seeking to drop criminal charges brought against two men in which it admitted federal prosecutors had provided incorrect information to court and ICE issued statement admitting federal agents made false statements under oath).

With all due respect, especially given this history and context, Ms. Comans does not want to take the word of Defendants' counsel rather than using discovery to explore and answer this question herself. She should, just as others aggrieved under the Privacy Act have, be permitted to first seek discovery on these issues. *See Tripp*, 193 F. Supp. 2d at 232. *See also Chen v. FBI et al.*, 153 F.4th 1289, 1292 (D.C. Cir. 2025) (Privacy Act lawsuit permitted various document requests, interrogatories, and requests for admission and eighteen depositions of current and former government employees); *Feldman,* 797 F. Supp. 2d at 43-44 (discovery authorized in

11

Privacy Act improper disclosure case); *Tripp v. Dep't of Def.,* 219 F. Supp. 2d 85, 94 (D.D.C. 2002) (discovery permitted in Privacy Act improper disclosure case); *Lowe v. Winter*, No. 06-1803, 2007 WL 2015389, at *6-7 (D.D.C. July 12, 2007) (discovery permitted in Privacy Act lawsuit alleging unlawful disclosure of removal from command).[3]

Dated:  May 15, 2026

Respectfully submitted,

*/s/ Taryn Wilgus Null*
Norman L. Eisen, Esq.
D.C. Bar #435051
Tianna J. Mays, Esq.
D.C. Bar #90005882
Taryn Wilgus Null
D.C. Bar #985724
Democracy Defenders Fund
600 Pennsylvania Avenue SE, No. 15180
Washington, DC 20003
(202) 594-9958
Norman@democracydefenders.org
Tianna@democracydefenders.org
Taryn@democracydefenders.org

Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20036
(202) 498-0011
Brad@MarkZaid.com
Mark@MarkZaid.com

*Attorneys for Plaintiff*

---

[3] The *Lowe* case was later settled and dismissed.

12