UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * | ) | |
| MARY COMANS, | ) | Civil Action |
| | ) | No. 25-00624 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DEPARTMENT OF HOMELAND SECURITY, | ) | Washington, D.C. |
| et al., | ) | May 29, 2026 |
| | ) | 10:32 a.m. |
| Defendants. | ) | |
| | ) | |
| * * * * * * * * * * * * * * * * | ) | |

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE ANA C. REYES
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF: TARYN WILGUS NULL, ESQ.
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue, Southeast
Suite 15180
Washington, D.C. 20003

MARK S. ZAID, ESQ.
LAW OFFICES OF MARK S. ZAID, P.C.
1250 Connecticut Avenue, Northwest
Suite 700
Washington, D.C. 20036

FOR THE DEFENDANT: JOHN BARDO, ESQ.
UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
601 D Street, Northwest
Washington, D.C. 20530

REPORTED BY: LISA EDWARDS, RDR, CRR
Official Court Reporter
United States District Court for the District of Columbia
333 Constitution Avenue, Northwest
Room 6509
Washington, D.C. 20001
(202) 354-3269

THE COURTROOM DEPUTY: This is Civil Action 25-624, *Mary Comans versus Department of Homeland Security, et al.*

Would the parties please identify themselves for the record, beginning with Plaintiff's counsel.

MS. NULL: Good morning, your Honor. Taryn Wilgus Null for Plaintiff, Mary Comans. I'm with my co-counsel, Mark Zaid.

THE COURT: Good morning.

Good morning, ma'am.

MR. BARDO: Good morning, your Honor. John Bardo on behalf of the Government.

THE COURT: Good morning, Mr. Bardo. Nice to see you again as always.

MR. BARDO: Same, your Honor.

THE COURT: I think we're on your motion. Do you want to go do you?

MR. BARDO: Yes, your Honor.

On the issues that the Court asked us to brief in the motion to dismiss, the case law is sparse. But the two cases that we identified that address this issue favor the Government's position that simply disclosing that an individual was terminated from their federal employment is not a violation of the Privacy Act.

In order to find a violation of the Privacy Act,

the disclosure would have to come with some additional information that was pulled from a system of records.

And here, the purported reason for Ms. Comans's termination was not pulled from a system of records.

And --

THE COURT: Is there a factual dispute about whether it was pulled -- are we still in a factual dispute about that or no, Plaintiffs?

MR. BARDO: Are you asking me or are you asking --

THE COURT: Well, I'm sure you're going to say no.

MR. BARDO: Yes. I'm --

THE COURT: So I'm asking them.

MR. BARDO: Sure. Well, we've checked all the systems of records, and we couldn't find any reference to Ms. Comans putting migrants in luxury hotels.

THE COURT: Okay. Can you -- Plaintiffs, when you get up, can you just address that first, please.

Go ahead.

MR. BARDO: Yes. So in that respect, we believe it's an open-and-shut case. I mean, it comes down to the -- whether the Court finds *Stuart v. Vilsack* from the Eastern District of Washington persuasive, along with *Ramos versus Department of Agriculture* from the Southern District of Florida.

I will add, I think there's also *Castle versus*

*Department of Veterans Affairs*, where the district court in New Hampshire found that disclosing that the plaintiff there was discharged from his position at the VA was acceptable, but releasing the letter that stated the reasons for his disclosure was a violation. And that letter, of course, came from a Privacy Act system of records.

And we haven't been able to identify any other Privacy Act systems of records that would be relevant. We sent our list of records -- of systems of records to Plaintiff. If we had identified any or if they had asked us to, we would have searched them. But --

THE COURT: Plaintiffs, you agree with that, right? They've given you and they've searched to your satisfaction whatever you allege exists?

MS. NULL: Well, we have not been able to take discovery ourselves. So our position is that we should be able to take limited discovery in order to speak to Defendants' representatives ourselves rather than just rely on the representation of counsel based on his communications.

I think the big question is, where did this information come from? And that's the question that we would like an answer to. It came from somewhere. We don't suspect that it was just invented out of thin air.

THE COURT: But you've talked to -- as I recall,

you've talked to the relevant people and they don't know where it came from?

MR. BARDO: Yes. That's correct, your Honor.

THE COURT: If you put them up for deposition, they --

MR. BARDO: I should correct that, your Honor. I did not talk to Ms. McLaughlin.

THE COURT: She's no longer with the agency, right?

MR. BARDO: That's correct. But she's the one who made the statement. And we looked at Privacy Act systems of records and couldn't find anything.

But I will mention if the information came from somewhere that's not a Privacy Act system of records, then that's not a Privacy Act violation.

THE COURT: Okay. What if she just heard it, like, someone came up and told her, like, some staff person told her and that person had gotten it from a system? Is that a violation?

MR. BARDO: It would be a violation from the staff person who got it from the system of records.

THE COURT: All right. To tell her?

MR. BARDO: Yes, because that would be an unauthorized disclosure.

But again, that's not what happened here, because

it's not in a system of records.

THE COURT: Well, it did come from somewhere, right? It didn't come out of thin air. I mean, I take Plaintiff's point that Ms. McLaughlin --

MR. BARDO: Well --

THE COURT: -- probably didn't just make it up.

MR. BARDO: I have no view on that, your Honor. But --

THE COURT: Smart move.

MR. BARDO: But I know, for example, we didn't cite it, but it was a case that I had earlier in my tenure here at the office, *Mullane versus the Department of Justice*. The plaintiff brought a Privacy Act claim stemming from information about his internship at the Department of Justice that was found in an email. And in that case, Judge Walton found that there was no Privacy Act violation because an email is not a system of records.

THE COURT: Okay. Do we know where Ms. McLaughlin resides? Do we know if she's within some subpoena power?

MR. BARDO: I don't know that, your Honor.

THE COURT: I take it your agency would have the last known contact?

MR. BARDO: Yeah. We would be able to provide the last known contact. But we have no ability to make her -- I mean, I know the Court obviously has the ability to enforce

subpoenas, but if --

THE COURT: I forget what the rule is now. And I should know this. But do either of you know what the rule is? It used to be -- well, is it still within the 100-mile thingamajig?

MR. BARDO: That's my understanding. 100 miles.

THE COURT: Okay. And then as I recall, there are some statutes that give district courts nationwide subpoena power, right?

MR. BARDO: I haven't researched that, your Honor. But that sounds familiar.

THE COURT: I'm sure it's not the Privacy Act. I think it's something like securities laws or something. I'm definitely going off memory here.

Is there anything else you want to tell me before I hear from the Plaintiffs?

MR. BARDO: Nothing else from the Government, your Honor.

THE COURT: Thank you, Mr. Bardo.

MS. NULL: Good morning, your Honor.

THE COURT: Good morning.

MS. NULL: So we definitely agree with the Government that the case law is sparse on whether the disclosure of the termination is a Privacy Act violation.

THE COURT: Okay.

MS. NULL: However, we disagree that the case law that is out there supports the Government's position.

I don't want to repeat our entire brief, but in our brief we identified a number of cases that dealt with the disclosure of a termination. None of those cases suggested that the disclosure of termination could not support a Privacy Act violation. All of those cases could have been very tidily dealt with if that were the rule. So we think the import of all of those cases is that the disclosure of a termination could be a Privacy Act violation if the other factors are met, you know. We also think that this doesn't happen a lot because the government, I think, knows that they can't do this.

You know, we would also take the position that the two cases that Defendant identifies, *Stuart* and *Ramos* and *Castle* as well, don't actually support the rule that the Government is citing them for. You know, *Stuart* is an unpublished case from the Eastern District of Washington. It cited one 1975 case, the Tennesseean lawyer case, to support that statement. And that case was in a very different context about people who have been arrested or indicted and was very clear that the reason that those individuals did not have privacy interests in their employment status was because they have been arrested and indicted and were no long private persons.

So we don't think that case is well-reasoned, and of course it is not controlling here.

THE COURT: We still have the problem, though, right, that we have no idea where this -- I'm sorry. Was it Ms. McLaughlin's email or text or Ms. Loomer's text? I forget where we are.

MS. NULL: Ms. McLaughlin was the one who disclosed the information and --

THE COURT: To Ms. Loomer?

MS. NULL: Well, she put out a press release and gave a statement, you know, to *The New York Times*.

THE COURT: All right.

MS. NULL: So we would like the ability to subpoena her for a deposition, assuming she is of course within a radius that would allow us to issue a subpoena to her, because we do think that is an important underlying question.

But regardless, we think the import of the case law is that merely disclosing the fact of an employee's termination can be a Privacy Act violation. That's not merely disclosing an employee's status.

The other thing about this disclosure was that there was other information disclosed. Now, even if that other information alleging that she was illegally circumventing money to hotels to house migrants, even if

that information itself was not kept in the system of records, that was the context for the disclosure of her termination. It was not a neutral fact that she no longer worked for the government.

There was some pretty severe --

THE COURT: Well, I understand. I mean, that goes to libel or slander or whatnot.

I mean, presumably, she did not -- my understanding is that she did not illegally fund 59 -- provide 59 million in funds to house migrants. Right?

MS. NULL: She did not do anything illegal or improper. That is correct.

THE COURT: So presumably, none of that's going to be in a system of record because it's not true.

MS. NULL: I don't think it is true. But her termination, the fact of her termination, was in a system of records. And they disclosed it to the public along with all of these other pretty severe statements about her behavior as an employee.

THE COURT: Okay. Well, let's just be careful with our words. They didn't disclose her behavior because they were wrong about her behavior.

MS. NULL: Sure.

THE COURT: So they --

MS. NULL: They made allegations. Yes.

THE COURT: I mean, it's more than that. I mean, they made -- well, actually, I should ask.

Does the Government contest or does it not take a position on whether the Plaintiff illegally funded over $59 million for illegal aliens?

MR. BARDO: We take no position on that, your Honor.

THE COURT: So according to the Plaintiff, it wasn't just an allegation; they were, like, besmirching her reputation. Right?

MS. NULL: Correct. And we do think that's important context for the disclosure of her termination.

THE COURT: But why -- yes. I mean, of course it's important context in the sense of this really frickin' sucks. But why is it relevant to the context of whether or not there's been a Privacy Act violation? Because I don't -- I mean, what element of the Privacy Act focuses on the context of the disclosure as opposed to just a disclosure itself?

MS. NULL: Sure. So there were numerous cases that discussed whether the disclosure of employment status was a violation of the employee's privacy. And what numerous cases discussed was that merely disclosing whether someone is or is not employed by the government doesn't, you know, make any statement -- you know, doesn't delve into

their privacy at all. This is in part based on the FOIA exception. That information cannot be disclosed pursuant to a FOIA request if it intrudes on an individual's privacy.

So this was not merely a neutral fact about whether she was or was not employed; this was deeply personal information. And that fact --

THE COURT: But this is where I'm getting tripped up, because you say this isn't just about whether or not she was employed or fired. Right? That's the deeply personal information. And then you have the false allegations, the allegedly false allegations. And that's deeply personally smearing of someone's reputation.

MS. NULL: Correct.

And I think our position -- and I think the case law supports this -- is disclosing that an employee has been terminated, that is a Privacy Act violation. The Privacy Act protects -- just by the plain language of the Privacy Act, the Privacy Act protects that information from improper disclosure.

THE COURT: So if the tweet had been, "FEMA's chief financial officer no longer works at the agency. She illegally funded over $59 million for illegal aliens to stay in luxury hotels at NYC last week," that doesn't say she was fired; that just says she's no longer at the agency.

MS. NULL: Correct.

THE COURT: That would not be a violation?

MS. NULL: If that other information is not in a system of records, that may not be a Privacy Act violation, because I think that is only a disclosure that she no longer works for the agency.

Maybe she --

THE COURT: So the argument is that the fact of a firing is the private information?

MS. NULL: Correct. And I think --

THE COURT: But if I -- if she comes -- if the Plaintiff comes and applies to clerk for me and I ask, like, "This is an amazing résumé, but let me just double-check her references," and I call DHS and they say, "Oh, she was fired," would that be a Privacy Act violation? I mean, I'm asking for a reference. They can't just say she works here or she doesn't work here. I mean, I'm asking, why did she leave?

MS. NULL: Yeah. So I do believe there's an exception for disclosing information to an employer.

THE COURT: Okay.

MS. NULL: I know that came up in at least one of our cases. So I think it might be covered by that exception.

THE COURT: Okay.

MS. NULL: But otherwise, it would be.

THE COURT: It seems like a pretty thin line, though, right? If the tweet had said, "She no longer works here," okay. But because it says she's fired, that's a violation of the Act. I mean, that just seems like a weird way to read the statute.

MS. NULL: I don't think so, because I think whether someone works or does not work for the government is a neutral fact.

There are all kinds of reasons why someone may not work for the federal government. "I used to work for the federal government. I resigned and I no longer do." I don't think intrudes --

THE COURT: Well, your bank account is happier for it.

MS. NULL: Pardon?

THE COURT: I said, I'm sure your bank account is happier for it.

MR. BARDO: We'll gladly take you back, Ms. Null.

THE COURT: Mr. Bardo, do you agree that's kind of where we are right now?

One question is, do you agree that if I read the case law to say that a firing is a Privacy Act violation, that then we survive summary judgment? Or do I still have to find that the firing came from a system of record?

MR. BARDO: Yes. I think based on the case law,

your Honor, it would -- if you were to find that disclosing a firing is a violation of the Privacy Act, I think that would -- that would survive a motion to dismiss.

THE COURT: Okay.

MR. BARDO: But the cases that are out there find that disclosing that someone is fired is not a violation of the Privacy Act.

THE COURT: So what's your best case on that? Is that the Washington unpublished case?

MR. BARDO: Yes. *Stuart versus Vilsack* and *Ramos versus Department of Agriculture*. And, yes, *Stuart* is the unpublished case from the Eastern District of Washington.

THE COURT: And the agriculture case is from --

MR. BARDO: That's from the Southern District of Florida.

THE COURT: Who's the judge on that one? Do you know?

MR. BARDO: I don't know that, your Honor.

THE COURT: That's fine.

That one's published or unpublished?

MR. BARDO: That's unpublished.

THE COURT: Both of them are unpublished?

MR. BARDO: That's correct, your Honor.

But there's also that case from the District of New Hampshire that is published, and I acknowledge it's --

it fits in less well factually here. But we would submit that case also favors our position as well. And we submitted all three cases in our binder.

THE COURT: Yes. Thank you.

And your view as to why the two unpublished cases I shouldn't pay attention to are distinguishable other than the fact that they're district court cases and unpublished?

MS. NULL: So *Stuart*, the only case that it relied on to support the statement that the disclosure -- okay. To support the statement that an agency's disclosure of employment status has been held to not violate the Privacy Act, the only case it relied on was *Tennesseean Newspaper*, which was -- discussed the disclosure of employment status of persons who had been arrested or indicted.

And it very specifically talked about how those individuals do not have privacy interest rights because they are essentially public figures.

THE COURT: And then the case -- the Washington case, was it a firing or is this an employment status disclosure?

MS. NULL: Sorry. Which case?

THE COURT: The actual case. You say it relied on this other case.

MS. NULL: Oh, so *Stuart*, the Eastern District of Washington case, that was about the disclosure of a

termination.

THE COURT: Of a firing?

MS. NULL: Correct.

THE COURT: And then the other cases are distinguishable because...?

MS. NULL: Yeah. So the *Ramos* case, which again Defendants cited *Ramos* for the proposition that disclosing someone's employment status is disclosing whether an employee is still employed or has been terminated.

However, *Ramos* distinguished an employee's status on administrative leave from an employee's employment status, quote, "because one's employment status only indicates whether one is employed by a government agency and reveals nothing about one's private affairs.

"To the contrary, one's status on administrative leave is related to one's job performance, the disclosure of which would be an unwarranted invasion of personal privacy and would violate the Privacy Act."

We would argue that one's termination is also related to one's job performance; in fact, even more so than the fact that someone has been placed on administrative leave.

THE COURT: Okay. Your best case?

MS. NULL: So I think our best case is the *Minshew* case, which is from the District of Nevada. This was a case

in which a former Air Force employee sued the Air Force for an unauthorized disclosure in violation of the Privacy Act after her former supervisor informed a prospective employer that she had been terminated for cause.

So the Court denied both parties' cross-motions for summary judgment, finding that there are genuine issues of fact in dispute as to whether the information was willfully disclosed and whether the need-to-know exception applies.

There was no disclosure -- there was no suggestion that disclosure of a termination could not support a Privacy Act violation. And that case was published.

THE COURT: All right. And the Plaintiff was fired. So we all agree the Plaintiff was fired?

MS. NULL: Correct.

THE COURT: So then talk to me about why you want to depose Ms. McLaughlin, because what is she going to say that's going to help you?

MS. NULL: We don't know what she's going to say at all. We don't know where this information came from.

THE COURT: But your point is it doesn't matter. Right? I mean, if it was that she was fired, that certainly is in a record somewhere, that she was fired.

MS. NULL: It is.

THE COURT: Right? Okay.

So whether she got that directly or indirectly, is your view that it's a Privacy Act violation?

MS. NULL: I think it might be an additional Privacy Act violation if there was also -- you know, if they had disclosed that information about her, you know, illegally circumventing government rules. If that was also in a Privacy Act system of records somewhere, that might support an additional violation.

THE COURT: How was she informed of her termination?

MS. NULL: She received a notice of removal.

THE COURT: What did the notice of removal say?

MS. NULL: It says, "You are being removed from your position pursuant to Article II of the Constitution."

THE COURT: Did it say anything else about why?

MS. NULL: It did not.

THE COURT: Government, you concede or you agree that there is a system of records which says that she was fired?

MR. BARDO: That is correct, your Honor. And we disclosed that to them. We also disclosed her performance reviews, which don't say anything about this, the information that's in the email or press release.

THE COURT: Let's say I make a determination that disclosing that someone has been fired is not in and of

itself a Privacy Act violation. Don't freak out. I don't know what I'm going to do yet. But let's just say I make that decision.

Is there anything that Ms. McLaughlin's testimony would get you, assuming she said X, Y or Z, that would force me to deny the motion to dismiss, notwithstanding having found that the firing decision alone was not a violation?

MS. NULL: I think potentially it could be, because we are in the position of not having the information about exactly what happened. We have no reason to not believe Mr. Bardo's representations. I am confident that he did in fact send questions to the agency and that they sent answers back.

We did cite in our brief a number of recent examples of DOJ attorneys making misrepresentations to courts based on inaccurate information from federal agencies, and we do --

THE COURT: I know, but I trust Mr. Bardo, and I doubt he had been -- he has been bamboozled. I mean, if I didn't know Mr. Bardo at all, I might have a different view. But I trust that he did a thorough job.

Don't let that go to your head. That could change any moment.

All right. Well, here's what I'm inclined to do: Mr. Bardo -- well, I might not be inclined to do what I was

about to be inclined to do.

Mr. Bardo, you looked, as I understand it, to determine whether there was any information regarding the luxury hotels rationale in the system of records. Right? And you didn't find any?

MR. BARDO: That's correct, your Honor.

THE COURT: Okay. Remind me. In your complaint, do you have in your complaint that the hotels rationale was in the system of records?

MS. NULL: I honestly -- I'm not 100 percent sure. I think we alleged that all of the information disclosed was in a system of records.

THE COURT: Hold on a sec.

MR. BARDO: (Tenders document to opposing counsel.)

MS. NULL: Thank you. I appreciate that. I should have had that in my binder.

THE COURT: Thank you, Mr. Bardo.

Have I sent you guys to mediation yet?

MS. NULL: No.

THE COURT: Mr. Bardo, do you think it's worth mediating, given that at a minimum, you know, we have a live, unsettled legal issue with respect to the firing legal question?

MR. BARDO: I'll be honest, your Honor. I don't

think my client is inclined to put any money on this case until there's, like, some kind of ruling one way or another on this threshold legal issue.

THE COURT: Okay. That's fair.

So here's what I'm going to do: I'm going to take this issue under advisement.

In the meantime, Mr. Bardo, could you find out what Ms. McLaughlin's last known address is and provide it to the Plaintiffs?

MR. BARDO: Yes.

THE COURT: And if she's not within the subpoena power, then that is what it is.

Ms. Loomer also tweeted about it. So you're not concerned about what she did?

MS. NULL: Well, she's not a government employee.

THE COURT: Well, neither -- oh, she wasn't a government employee at the time?

MS. NULL: Ms. McLaughlin was a government employee at the time.

THE COURT: Ms. Loomer was not at the time?

MS. NULL: Yes. Correct.

THE COURT: And then if Ms. McLaughlin is no longer within the 100-mile radius, then that solves that and you can't compel her deposition.

MS. NULL: Correct.

THE COURT: And I doubt she's going to voluntarily appear.

MS. NULL: That seems correct.

THE COURT: If it is within the 100 miles, then I will allow you to take her deposition.

Hold on. And I'll -- if you could try to get it scheduled in the next two or three months after you get the address. Can you guys just let my chambers know either way so I know what's happening?

MS. NULL: Yes.

THE COURT: And so I'll let you do that for now, then.

MS. NULL: Okay.

THE COURT: Go ahead.

MR. BARDO: Yes, your Honor.

I mean, I know the Court's general approach is you'll want us to work this out among ourselves. But my concern with the deposition is that it's going to become a circus and get into areas that are completely unrelated to this case.

THE COURT: Well, that's not going to happen, because counsel knows that if that happens you're going to reach out to my chambers, and I will be unamused.

So we're going to keep a very tight deposition to where the information came from. We're not going to get

into targeting the Plaintiff; we're not going to get into how DHS works; we're not going to get into Ms. McLaughlin's political views. It's going to be very tightly controlled to where she got the information from. All right?

MS. NULL: Yes. We understand that. And if Ms. McLaughlin is not available to be subpoenaed, we could also -- we think it would also be instructive to be able to depose someone on her staff. She was not working totally alone.

THE COURT: I'm not going to go into all that. I'm not -- I'm just doing this to give you a very limited deposition. And I'm not going to have him track down who might have been involved in this. That's going to take him a ton of time, and he might not be able to find the staff person because he's going to have to ask a bunch of people who was involved in this tweet. And I know from personal experience that Ms. McLaughlin tends to tweet a lot. So I just -- I'm not going to put him through that.

To calm your nerves about the deposition, I'm going to limit it to three hours, because there's no way you need -- you could do it in one, but I'll give you three hours. I'm limit it to three hours. And that should help your concern.

If you feel like she's going off on a tangent -- and you know me well enough to know that I would think she

was going off on a tangent -- stop the deposition; reach my chambers; I'll get on the phone quickly. Okay? But I'm confident she's not going to do that because if that happens and I have to get on the phone and I find that she's going off on a tangent, there will be serious unpleasant consequences. Okay?

MR. BARDO: Understood, your Honor.

THE COURT: Okay.

MS. NULL: I understand.

THE COURT: So maybe try to find that information in the next couple weeks.

MR. BARDO: We can. We can do that, your Honor.

THE COURT: All right. Thank you, everyone.

So in the meantime, I'll take this under advisement.

MS. NULL: Thank you.

THE COURT: If you take the deposition -- well, if she's within the subpoena power, let me know. Well, let me know either way. And if she isn't in the subpoena power and you take the deposition and after you take the deposition you want to amend your complaint or you all want to come back in front of me, just let me know that as well. All right?

MS. NULL: Absolutely. Thank you.

MR. BARDO: Okay.

THE COURT: Thank you, everyone.

MS. NULL: Thank you.

(Proceedings concluded at 11:02 a.m. )

**CERTIFICATE**

I, LISA EDWARDS, RDR, CRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings produced to the best of my ability.

Dated this 9th day of June, 2026.

/s/ Lisa Edwards, RDR, CRR
Official Court Reporter
United States District Court for the
District of Columbia
333 Constitution Avenue, Northwest
Washington, D.C. 20001
(202) 354-3269